UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUSINESS CONCEPTS, INC.,

           Plaintiff,

vs.

RESTAURANT SYSTEMS
INTERNATIONAL, INC.,

           Defendant.

_____/

Case No. 1:04-CV-587

Hon. Hugh W. Brenneman, Jr.

**OPINION**

This matter is now before the court defendant's motion to dismiss for lack of personal jurisdiction pursuant to Fed. Rules Civ. Proc. 12(b)(2) (docket no. 6).[1]  Plaintiff has alleged diversity jurisdiction under 28 U.S.C. § 1332. Compl. at ¶ 6. Defendant's motion seeks dismissal pursuant to Fed. Rules Civ. Proc. 12(b)(2) for "lack of jurisdiction over the person."

**I.     Background**

Plaintiff makes the following allegations in its complaint.  Plaintiff, a Michigan corporation with offices located in Grand Rapids, is engaged "in the business of beverage consulting whereby the [p]laintiff will assist customers in establishing and/or modifying their soft drink beverage program.  Compl. at ¶¶ 1, 8.  Plaintiff's services "often include the negotiation of a new soft drink contract with Pepsi-Cola, Coca-Cola or some other beverage company for the customer." *Id.*  Defendant is a New Jersey corporation with its principal place of business in Staten Island, New

---

[1]  Defendant has provided a copy of a certificate of amendment to its certificate of incorporation, which indicates that on or about February 6, 2003 defendant's name was changed to "Everything Yogurt Brands, Inc." Certificate of Amendment, attached to defendant's motion as Exh. G.

York, which "did business and/or had franchise outlets in the State of Michigan." *Id.* at ¶ 2.  On July 26, 1999, plaintiff entered into a beverage consulting agreement ("consulting agreement") with defendant.  *Id.* at ¶ 9.

Under the terms of the consulting agreement, defendant granted plaintiff "the exclusive right and authority to negotiate on behalf of [defendant], the establishment and/or the modification of its soft drink program, with Coke and/or Pepsi, for a term of not less than five years." Consulting Agreement, attached to Compl. at Exh. A. at p. 1. Plaintiff's compensation was based upon "the improvement in the base rate of [defendant's] beverage program." *Id.*  Plaintiff had "full right and authority" to negotiate a soft drink beverage program on behalf of defendant until the consulting  agreement terminated on May 30, 2000.  *Id.* at p. 2.  The consulting agreement also provided that "[i]rrespective of the termination date, [defendant] shall owe [plaintiff] the compensation referenced herein during the full term of any beverage agreement negotiated with Pepsi or Coke."  *Id.*  The consulting agreement applied "not only to [defendant], but also to its Franchisees and subsidiaries."  *Id.*

Plaintiff, on behalf of defendant, negotiated a fountain beverage sales agreement with Pepsi ("Pepsi agreement")  to commence on December 17, 1999 and expire upon the later of December 31, 2006 or such time as defendant purchased a total of 715,000 gallons or more.  Compl. at ¶ 11.  *See* Pepsi agreement, attached to defendant's motion as Exh. H.

On March 8, 2000, plaintiff and defendant amended the compensation schedule of the consulting agreement.  Compl. at ¶ 13.  Under the amended payment schedule, defendant paid plaintiff the following compensation: an "up-front bonus payment" of $30,000 and "annual funding payments for 2000 and 2001" of $27,383, for total compensation of $57,383.  *Id.* at ¶ 14.  *See* March

2

8, 2000 amendment, attached to Compl. as Exh. D.  Plaintiff alleges that under the terms of beverage consulting agreement, defendant owes it total compensation of $199,097.50, with a balance due of $141,714.50.   Compl. at ¶ 15. Plaintiff seeks damages in the amount of $141,714.50 "plus compensation from any bottle and/or can funding" due plaintiff under the terms of the beverage consulting agreement.  *Id.* at p. 3.[2]

## II.    Discussion

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).  Although this matter is before the court on defendant's motion to dismiss, plaintiff has the burden of establishing the district court's jurisdiction.  *Id.* at 887.   Where the court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a Rule 12(b)(2) motion, the plaintiff "need only make a prima facie showing of jurisdiction."  *Id.*, *quoting Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  In ruling on a 12(b)(2) motion, the "court will not consider facts proffered by the defendant that conflict with those offered by the plaintiff," *Neogen*, 282 F.3d at 887, and should construe the facts presented in the pleadings and affidavits in the light most favorable to the non-moving party.  *See Serras v. First Tenn. Bank National Association*, 875 F.2d 1212,  1214 (6th Cir. 1989).

---

[2] The Pepsi agreement was amended on August 29, 2000, after the consulting agreement expired on May 30, 2000.  *Id.* at ¶ 12; Pepsi Amendment, attached to Compl. at Exh. C.  However, this amendment does not appear relevant to defendant's motion to dismiss.

### A.      Limited personal jurisdiction

Michigan's long-arm statute "has been construed as conferring on the state courts the maximum scope of personal jurisdiction consistent with due process." *Amway Corporation v. Kope Food Products, Inc.*, 840 F. Supp. 78, 80 (W.D. Mich. 1993).  The exercise of limited jurisdiction "occurs where 'a State exercises jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" *Kmart Corp. v. Key Industries, Inc.*, 877 F. Supp. 1048, 1051 (E.D. Mich. 1994), *quoting Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9 (1984). Michigan extends limited jurisdiction over nonresident corporations pursuant to MCL § 600.715, which provides in pertinent part as follows:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporations arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

MCL § 600.715(1).  Plaintiff can meet the "transaction of any business" requirement, MCL § 600.715(1), by demonstrating that defendant performed "the slightest act of business in Michigan." *Neogen*, 282 F.3d at 888, *quoting Lanier v. American Board of Endodontics*, 843 F.3d 901, 906 (6th Cir. 1988).  Plaintiff must also satisfy the "arising out of" requirement, MCL § 600.715, by demonstrating that the alleged damages were directly related to defendant's transaction of business in Michigan.  *Neogen*, 282 F.3d at 888.

The consulting contract, which was signed on July 26, 1999, did not expire until December 31, 2006.  Plaintiff's president, Mr. Zerilli, has submitted an affidavit stating that:

4

> at the time the beverage consulting agreement was entered into I was
> aware and informed by Restaurant Systems International that it had
> two franchise locations in the state of Michigan.  There was a
> franchise location at the Meridian Mall in Lansing, Michigan and
> another at the Summerset Mall in Troy, Michigan.

Zerilli Affidavit at ¶ 6 (docket no. 16).  This affidavit is sufficient to demonstrate that defendant was

transacting business in Michigan when the parties entered into the consulting agreement. *See*

*Neogen*, 282 F.3d at 887.  In addition, defendant has submitted selective corporate documents that

do not contradict Mr. Zerilli's affidavit, and demonstrate that defendant was transacting business in

Michigan during at least some of the term of the consulting agreement.  On July 18, 2001 defendant

filed a "Notice of Intent" with the Michigan Attorney General, Consumer Protection Division, giving

"notice of its intent to do business in the State of Michigan by way of conducting franchise sales

activities."  Notice, attached to defendant's motion as Exh. E.  Defendant has also provided a copy

of a letter from a legal secretary at the Michigan Attorney General's office stating that "[t]he

franchise registration for Restaurant Systems International, Inc. of Staten Island, New York expired

August 18, 2002, and was not renewed."  Letter 11/16/04 attached to defendant's motion as Exh. F.

Viewing Mr. Zerilli's affidavit and these documents in the light most favorable to the non-moving

party, the court finds that plaintiff has met the "transaction of business" requirement under MCL §

600.715(1).[3]

       The next issue is whether the act that forms the basis of plaintiff's suit arose from this

business, i.e., is this dispute directly related to defendant's transaction of business in Michigan.  *See*

---

[3] The record does not indicate when defendant's two Michigan franchises ended operations. Plaintiff
has established that they began in July 1999.  Defendant has presented evidence that it terminated business
in Michigan in August 2002. Viewing this evidence in the light most favorable to plaintiff, the court
concludes that defendant's franchises operated from July 1999 through August 2002.

*Neogen*, 282 F.3d at 888.  Plaintiff has made a prima facie showing: that defendant operated at least two franchises in Michigan when the consulting agreement was executed; that the consulting agreement at issue in this suit applied to defendant's "soft drink program;" that plaintiff negotiated the Pepsi agreement pursuant to its duties under the consulting agreement; that the Pepsi agreement extended through December 31, 2006; and that plaintiff received compensation from the Pepsi agreement in 2000 and 2001.  By its own admission, defendant filed a notice of intent to do business in Michigan on July 18, 2001, a date which falls within the term of the Pepsi agreement.  The allegations in the complaint and other papers filed in this suit indicate that the Pepsi agreement negotiated by plaintiff benefitted defendant's franchises, including the two franchises located in Michigan.  Accordingly, plaintiff has made a prima facie showing that the consulting agreement arose out of defendant's transaction of business in Michigan.

### B.    Due process/Minimum contacts

Finally, the court must determine whether plaintiff has established sufficient "minimum contacts" with Michigan so that the exercise of jurisdiction over defendant would not offend "traditional notions of fair play and substantial justice."  *See Neogen*, 282 F.3d at 889, *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The Sixth Circuit has developed a three part analysis to determine whether sufficient minimum contacts exist to confer jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

6

*Neogen,* 282 F.3d at 889-90, *quoting Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).   Plaintiff has satisfied all three parts of this analysis.

      1.    **Defendant purposefully availed itself of the privilege of acting in Michigan.**

      The proper test for personal jurisdiction is whether defendant's contacts in Michigan represent something more than "random, fortuitous, or attenuated contacts" in the state. *Burger King Corp. v. Rudsewicz,* 471 U.S. 462, 475 (1985).   The fact that defendant contracted with a Michigan resident does not, in and of itself, meet the minimum contacts requirement. *See id.* at 478 ("'[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer is clearly that it cannot") (emphasis in original). Here, however, the consulting agreement affected all of defendant's operations, including those located in Michigan. *See* Zerilla Aff.  In addition, defendant itself presented evidence of its "notice of intent" to conduct franchise sales activities in Michigan. Finally, the consulting agreement provides that "[t]he parties hereto shall be governed according to the laws of Michigan."  Consulting agreement at p. 2.  While this choice of law provision is not a venue provision or a consent to be sued in Michigan, such a provision indicates defendant's intention to abide by Michigan law and should be considered by the court as one indication that defendant purposefully availed itself to jurisdiction in Michigan. *See Burger King Corp.*, 471 U.S. at 482 (although a choice of law analysis is separate from a minimum contacts jurisdictional analysis, "[n]othing in our cases . . . suggests that a choice-of-law provision should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections

of a State's laws' for jurisdictional purposes"). Accordingly, plaintiff has made a prima facie showing that defendant purposefully availed itself of the privilege of acting in Michigan.

> **2.     Plaintiff's cause of action arose from defendant's activities in Michigan.**

As the court previously discussed, plaintiff's consulting contract resulted in the Pepsi agreement, which affected defendant's soft drink beverage program. The consulting agreement applied "not only to [defendant], but also to its Franchisees and subsidiaries." Consulting agreement at p. 2. Although plaintiff did not perform any particular negotiation in Michigan, the consulting agreement benefitted defendant's Michigan franchises as well as its franchises in other states. Accordingly, plaintiff has made a prima facie showing that the cause of action for breach of the consulting agreement arose, at least in part, from defendant's activities in Michigan.

> **3.     Defendant's acts had sufficient connection with Michigan to make the exercise of jurisdiction reasonable.**

The final question before the court is whether defendant's acts or the consequences "have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Neogen*, 282 F.3d at 890. Defendant's connections to Michigan are: a consulting agreement that benefitted its soft drink beverage program, including its Michigan franchises; the Pepsi agreement which resulted from the consulting agreement and which benefitted its franchises in Michigan; defendant's 2001 notice of intent to conduct franchise sales in Michigan; plaintiff's status as a Michigan corporation; and, defendant's consent to have the consulting agreement governed by Michigan law. Viewing the facts in the light most favorable to plaintiff, the court concludes that defendant had a sufficient connection with Michigan to make the exercise of jurisdiction reasonable. Defendant undertook various activities in Michigan. By its very nature, the

8

consulting agreement affected customers in every state with a franchise operated by defendant.  It is conceivable that plaintiff could have filed suit in other jurisdictions that contained franchises.  But the fact that there may be jurisdiction elsewhere does not render this court's exercise of jurisdiction unreasonable.

In reaching this conclusion, the court rejects defendant's contention that it is not subject to the court's jurisdiction because it was not transacting business in Michigan when it was served with the summons and complaint (September 22, 2004).[4]  Defendant cites two cases to support this contention: *Renfroe v. Nichols Wire & Aluminum Co.*, 348 Mich. 425, 83 N.W.2d 590 (1957) and *Hellman v. Ladd*, 315 Mich. 150, 23 N.W.2d 244 (1946).  However, defendant presents no argument in its brief, nary even a pinpoint citation, to explain the relevance of these decades old Michigan Supreme Court decisions.  Rather, defendant simply states, "[t]he time that process is served upon the defendant is the controlling point in time for determining whether a corporate defendant is 'doing business' in the state."  Defendant's Brief at 8.[5]

---

[4]  It is unclear whether defendant asserts this as a defense to general jurisdiction under MCL § 600.711, limited jurisdiction under MCL § 600.715, or both.

[5]  *Renfroe* involved the question of "whether a non-resident plaintiff was entitled to maintain an action in a Michigan court against a foreign corporation authorized to do business in this State, but having its principal place of business in another State, upon a transitory cause of action not arising in Michigan." *Renfroe*, 348 Mich. at 427.  In finding that the Michigan had no jurisdiction over the dispute, the court quoted *Malooly v. York Heating & Ventilating Corp.*, 270 Mich. 240, 258 N.W. 622 (1935):

There may be some confusion among the authorities on the point, but jurisdiction is usually entertained when the cause of action against the corporation occurs within the state, and when it appears that the corporation is carrying on business at the time of the service of process.  Such principle is fair and just and complies with the construction by federal courts of the "due process" clause of the Fourteenth Amendment.

*Renfroe*, 348 Mich. at 430, *quoting Malooly*, 270 Mich. at 249.  In *Hellman*, the court affirmed the trial court's order quashing service of process, where the trial court found that the defendant foreign corporation had not been doing business in the state for three years prior to April 10, 1945 (the apparent date of service).

9

This court is not bound by the jurisdictional analysis set forth in these pre-*International Shoe* state court decisions. *See, e.g., Donley v. Whirlpool Corporation*, 234 F. Supp. 869, 873-74 (E.D. Mich. 1964) (rejecting old Michigan case law (including *Hellman*) that preceded the Revised Judicature Act of 1961 and did not apply the "liberal standards of due process" as set forth in *International Shoe*). Defendants have cited no cases, and this court has found none, that apply the mechanical "service of process" rule as suggested in *Renfroe*, *Hellman* or *Malooly*. *See generally, Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992) ("we have abandoned more formalistic tests that focused on a defendant's 'presence' within a State in favor of a more flexible inquiry into whether a defendant's contacts with the forum made it reasonable, in the context of our federal system of Government, to require it to defend the suit in that State"); *Burger King Corp.*, 471 U.S. at 478 ("[t]he Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests").

---

*Hellman*, 315 Mich. at 154. The court concluded that the defendant's activities in Michigan, which included making sales, collecting commissions, sending its employees to assist a manufacturer and providing technical assistance to the manufacturer's sales division "were, at most, incidental to the main purpose of [plaintiff's] corporate existence." *Id.*

### III.    Conclusion

The court finds that plaintiff has made a prima facie showing that defendant's connections to Michigan are sufficient to make the exercise of jurisdiction reasonable.[6] Accordingly, defendant's motion to dismiss (docket no. 6) will be DENIED.


Dated:  May 25, 2005                         /s/ Hugh W. Brenneman, Jr.
                                            Hugh W. Brenneman, Jr.
                                            United States Magistrate Judge

---

[6]  Having determined that the plaintiff has made a prima facie showing of limited personal jurisdiction pursuant to MCL § 600.715, it is unnecessary for the court to address defendant's claim that this court lacks general personal jurisdiction pursuant to MCL § 600.711.

11