UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BUSINESS CONCEPTS, INC.,

        Plaintiff,

vs.

RESTAURANT SYSTEMS
INTERNATIONAL, INC.,

        Defendant.
                                 /

Case No. 1:04-CV-587

Hon. Hugh W. Brenneman, Jr.

**ORDER**

        The court previously denied defendant's motion to dismiss for lack of jurisdiction. *See* Opinion and Order (May 25, 2005). This matter is now before the court on defendant's motion for reconsideration (docket no. 31).[1]

        The local rules provide that on a motion for reconsideration, a movant "shall not only demonstrate a palpable defect by which the Court and the parties have been mislead, but also show that a different disposition of the case must result from the correction thereof." W.D. Mich. LCivR 7.4(a). A defect is palpable if it is easily perceptible, plain, obvious, readily visible, noticeable, patent, distinct or manifest. *See Compuware Corp. v. Serena Software International, Inc.*, 77 F. Supp.2d 816, 819 (E.D. Mich. 1999).

        The consulting agreement at issue was signed on July 26, 1999 and terminated on May 30, 2000. *See* Opinion at 1-2 (May 25, 2005). Under the consulting agreement, plaintiff's

---

[1] While defendant's motion states that it is brought pursuant to Fed. Rules Civ. Proc. 60(b), defendant presents no legal argument with respect to Rule 60(b) or any subsection of the rule. Accordingly, the court will review defendant's motion pursuant to W.D. Mich. LCivR 7.4(a).

exclusive right to negotiate beverage agreements on behalf of defendant terminated on May 30, 2000. *Id.* However, portions of the consulting agreement remained in effect after the May 30, 2000 termination date. Specifically, the consulting agreement provided that "[i]rrespective of the termination date, [defendant] shall owe [plaintiff] the compensation referenced herein during the full term of any beverage agreement negotiated with Pepsi or Coke." *Id.* at 2. Pursuant to the consulting agreement, plaintiff negotiated a fountain beverage sales agreement between defendant and Pepsi (the "Pepsi agreement"), which commenced on December 17, 1999 and expired upon the later of December 31, 2006 or such time as defendant purchased a total of 715,000 gallons. *Id.* at 2. Under an amended compensation schedule of March 8, 2000, defendant paid plaintiff an "up-front bonus payment" of $30,000 and agreed to pay "annual funding payments for 2000 and 2001" of $27,383. *Id.* Plaintiff alleges that defendant owes it an additional $141,714.50 of payments under the consulting agreement. *Id.* at 3.

        In denying defendant's motion to dismiss, the court found (1) that plaintiff made a prima facie showing that the consulting agreement arose out of defendant's transaction of business in Michigan, and (2) that plaintiff had established sufficient minimum contacts with Michigan so that the exercise of jurisdiction over defendant would not offend "traditional notions of fair play and substantial justice." *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002), *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To survive defendant's motion to dismiss for lack of jurisdiction brought pursuant to Fed. Rules Civ. Proc. 12(b)(2), plaintiff only needed to make a prima facie showing of jurisdiction. *See Neogen*, 282 F.3d at 887. In ruling on defendant's motion to dismiss, the court did not consider facts presented by the defendant that conflicted with those offered by the plaintiff and construed the facts presented in the

pleadings and affidavits in the light most favorable to the non-moving party. *See Neogen*, 282 F.3d at 887; *Serras v. First Tenn. Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989).

The court's decision was based in part upon the affidavit of plaintiff's president, Mr. Zerilli, which demonstrated that defendant was transacting business in Michigan when the parties entered into the consulting agreement on July 26, 1999. *See* Opinion at 4 (May 25, 2005). Specifically, Mr. Zerilli stated that defendant operated a franchise at the Meridian Mall in Lansing, MI and another franchise at the Summerset Mall in Troy, MI. *Id.* at 4-5. The court also relied upon defendant's "Notice of Intent" to do business in Michigan, which defendant filed on July 18, 2001. *Id.* at 5. This "Notice" demonstrated that defendant was transacting business in Michigan while the Pepsi agreement, and the amended compensation schedule, were in effect.

In its motion for reconsideration, defendant has included a second affidavit of Ms. Cheryl Kempf, defendant's sales and leasing manager. This new affidavit contains additional factual information regarding defendant's franchise operations.[2] The information provided by Ms. Kempf establishes that defendant had only one franchise in Michigan, located at the Meridian Mall in Lansing, MI. *See* Kempf Aff. attached to defendant's motion. Ms. Kempf's affidavit also establishes that it had no franchise in Michigan when the parties' entered into the consulting agreement in 1999. *See* Kempf Aff. at ¶ 3; Exh. A attached to Kempf Aff. This evidence contradicts Mr. Zerilli's affidavit that defendant operated two franchises in Michigan at that time. Defendant makes no specific representation with respect to the alleged franchise operated at the Summerset Mall in Troy,

---

[2] In its brief, defendant includes a subsection entitled "Facts that appear to have been overlooked." Brief at 4-5. The court's earlier opinion was based upon the facts as presented by the parties. Ms. Kempf's June 10, 2005 affidavit contains specific information regarding defendant's franchise operations which was not presented in her November 22, 2004 affidavit.

MI. However, Ms. Kempf's affidavit and attached franchise records indicate the absence of a franchise in Troy, MI, and contradict Mr. Zerilli's statement that such a franchise existed in 1999.

While the parties dispute the extent of defendant's operations in Michigan, there is no question that defendant operated a franchise in Lansing, MI from December 2000 through September 30, 2001. The records indicate that defendant entered into a franchise agreement with DMB Enterprises of Mid-Michigan, Inc. on September 22, 2000. *See* Franchise Agreement, attached to Kempf Aff. as Exh. C. The franchise was opened in December 2000 and closed on September 30, 2001. *See* DMB letter (Oct. 10, 2001) attached to Kempf Aff. as Exh. F. Under the consulting agreement, plaintiff's exclusive right to negotiate beverage agreements on behalf of defendant terminated on May 30, 2000. However, plaintiff received compensation pursuant to the consulting agreement in the years 2000 and 2001 for his work performed in negotiating the Pepsi agreement. As the court discussed in its previous opinion, the Pepsi agreement benefitted all of defendant's franchises, including the franchise in Lansing, MI. *See* Opinion at 8 (May 25, 2005).

In summary, the parties had an on-going contractual relationship which affected defendant's business transacted at its Michigan franchise during the years 2000 and 2001. The record reflects that defendant transacted business in Michigan and had sufficient minimum contacts in this state to allow this court to exercise jurisdiction over defendant. *See International Shoe Co.*, 326 U.S. at 316; *Neogen*, 282 F.3d 888. Defendant has not demonstrated a palpable defect in the

court's order denying its motion to dismiss for lack of jurisdiction. Accordingly, defendant's motion for reconsideration (docket no. 31) is **DENIED**.

**IT IS SO ORDERED.**

Dated:  March 13, 2006    /s/ Hugh W. Brenneman, Jr.
                          Hugh W. Brenneman, Jr.
                          United States Magistrate Judge